IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DALE LITTLE § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| § | | |
| v. § | CIVIL ACTION NO. 4:11-cv-00717 | |
| § | **JURY** | |
| TECHNICAL SPECIALTY PRODUCTS § | | |
| LLC, KEITH LEAR, AND § | | |
| DONNA LEAR § | | |
| § | | |
| Defendants. § | | |

MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTION AND CONFORMED, AMENDED MOTION TO STRIKE PLAINTIFF'S EXPERTS BRIAN FARRINGTON AND SCOTT BARNES

Now Come Technical Specialty Products, LLC, Keith Lear, and Donna Lear, Defendants (collectively, "TSP"), and in support of their Memorandum in Support of their Objection and Conformed, Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes, would respectfully show the Court the following:

I. INTRODUCTION:

1.  TSP terminated Dale Little ("Plaintiff") on October 21, 2012, for, among other offences, padding his time sheets. Stated simply, Plaintiff reported working – and sought to be compensated by TSP –for hours he did not work. As an example, Plaintiff billed TSP ten (10) hours to commute 200 miles between Dallas and Abilene, Texas, which represents a 20 mph average rate of travel. (ECF 64, Ex. C, ¶11). Plaintiff, who retained counsel on October 6, 2012, instantly filed the present action, in which he seeks a litany of damages, including "lost wages" of more than $74,000 per year. (ECF 57); (ECF 64, ¶ 10). TSP deposed Plaintiff on December 14, 2012 and filed its motion for Summary Judgment on January 18, 2013. Realizing the legal, not to mention factual

challenges ahead, Plaintiff served exhaustive expert reports prepared by Brian T. Farrington and Scott A. Barnes on January 28, 2013. Plaintiff also designated no less than three (3) attorneys' fees experts, which is not surprising, given that Plaintiff's maximum liquidated damages are $345, assuming he accurately recorded his time, a position that TSP clearly disputes. (ECF 64, ¶ 53).

2. Brian Farrington's ("Farrington") expert report is fatally flawed. Specifically, Farrington propounds numerous legal conclusions, which, incidentally are unsupported by law or the uncontroverted facts. A copy is attached hereto as Exhibit "A." Second, Farrington applied the wrong methodology to reach his legal conclusions. Farrington's report is also unreliable because, among other reasons, his methodology has not been subjected to peer review and was admittedly prepared solely in anticipation of this litigation.

3. Apparently unsatisfied with the $74,000 per year calculated by his counsel, Plaintiff also retained Scott Barnes ("Barnes"), to opine as to lost wages. Even assuming Barnes' report is related to the facts of this case, Barnes' methodology is wholly unexplained. For example, Barnes began his $100,975 lost wage calculations (which he attributes to TSP) beginning on October 22, 2011. Barnes makes no attempt to justify Plaintiff's pay rate while at TSP with other employment opportunities, nor does he offset for Plaintiff's collection of unemployment benefits (which Plaintiff continues to collect) in any of his calculations. Moreover, Barnes makes no attempt to establish a baseline of Plaintiff's hourly earnings, which is important given that Plaintiff's billing is directly at issue in this lawsuit. A copy of Barnes' original report is attached hereto as Exhibit "B." Barnes essentially attached a number of hieroglyphs to his report without explanation.

4. TSP agreed to no less than three (3) separate extensions of Plaintiff's deadline to designate experts and serve reports. (ECF Nos. 55, 66-1). Plaintiff's last deadline came and went on January 28, 2013, yet Plaintiff failed to serve Barnes' "supplemental" report until January 31, 2012. A copy is attached hereto as Exhibit "C." For this reason alone, the Court is justified in striking

Barnes, as well as his report. More troubling for Plaintiff, the Court should strike Plaintiff's experts because they are categorically unreliable. In addition, Farrington's testimony plainly offers legal conclusions, which in all likelihood will confuse the jury. Incidentally, neither the law nor the Rules of Evidence permit experts to opine as to legal conclusions.

II.     ARGUMENT AND AUTHORITIES:

5.     Federal Rule of Evidence 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or determine a fact issue." An expert witness may not provide legal conclusions. FED. R. EVID. 704 Committee Note. In addition, as with any other witness, testimony offered under Rule 702 may be excluded if its probative value is substantially outweighed by the likelihood of confusion. FED. R. EVID. 403. Even if the jury were not misled into adopting outright legal conclusion proffered by expert witness, the testimony remains objectionable if it explicitly or implicitly communicates a legal standard to the jury because an expert may not compete with the judge's function of instructing the jury. *See, e.g., Hygh v. Jacobs*, C.A.2 (N.Y.) 1992, 961 F.2d 359. Although the expert may testify as to ultimate issue in the case, such testimony must not amount to a "legal conclusion;" it is for judge alone to instruct jury on applicable principles of law. *Shahid v. City of Detroit*, C.A.6 (Mich.) 1989, 889 F.2d 1543.

**a. Farrington Is Not Permitted to Opine as to Conclusions of Law**

6.     Farrington's report reaches the following legal conclusions:

<u>Defendants' 9/23/11 policy</u> as written clearly… <u>calls for a violation of the FLSA</u>;

Defendants also had <u>other policies</u> which <u>resulted</u> and/or could result <u>in violations of the Act</u>. <u>Failure to pay</u> for instances when <u>employees worked through lunch</u>, if any, <u>would result in FLSA violations</u> if such instances occurred in overtime workweeks;

<u>If he [Plaintiff] complained</u> about the terms of the policy as written, <u>and was fired</u> for doing so, he would have been fired for complaining about a policy <u>which called for violations of the FLSA</u>;

<u>Requiring employees to pay for vehicle maintenance and repairs would result in</u>

> <u>FLSA violations</u> if it reduced employees below minimum wage for up to 40 hours in any workweek, or reduced either straight time or overtime compensation during any hours above 40 in any workweek; and
>
> If defendants are found to be in violation of the Act, they <u>cannot successfully assert</u> as a defense against the imposition of liquidated damages claim <u>that they acted in</u> the <u>good faith belief</u> that their conduct complied with the Act, <u>and that</u> such <u>belief was reasonable</u>.

(Ex. A, p. 30). In each of the legal conclusions identified above, Farrington opines that TSP breached the legal standards applicable to Plaintiff's causes of action.[1] As discussed above, the courts universally hold that an expert may not opine as to legal conclusions. Farrington's testimony is objectionable because it explicitly attempts to communicate a legal standard to the jury, which remains within the exclusive purview of your Honor. *Hygh*, 961 F.2d 359. Locally, in *Singer v. City of Waco, Tex.*, the 5th Circuit Court of Appeals upheld a trial court's decision to exclude the testimony of a hired gun, formerly of the Department of Labor, where the expert intended to testify as to the FLSA's "willful" standard. 324 F.3d 813, 823 (5th Cir. Ct. App.2003).

### b. Farrington's Opinion is Unreliable

7. Rule 702 permits a qualified expert to testify <u>*only*</u> when the testimony is the product of reliable principles and methods <u>and</u> the expert has reliably applied those principles and methods to the facts of the case. FED. R. EVID. 702. *Daubert* set forth a non-exhaustive checklist for trial courts to use in assessing the reliability of scientific expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance

---

[1] The legal standards are fully briefed in TSP's motion for summary judgment. (ECF 64).

of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of nonscientific expert testimony, depending upon "the particular circumstances of the particular case at issue." S*ee Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 151 (1999).

8.  Farrington's report admits that the language within various Department of Labor Opinion letters, as well as the case law, frequently contradicts each other; however, Farrington has no hesitation opining that TSP violated numerous provisions of the FLSA, which is a legal opinion. Farrington's opinion and report are unreliable under *Daubert* because, among other things, they are incapable of verification by any scientific method. S*ee Daubert,* 509 U.S. at 593. Second, Farrington's conclusions have not been evaluated in light of the potential rate of error, nor have they been subjected to peer review. *See id.* at 593 -4. Farrington's conclusions are unreliable because they rely on flawed theories and facts. *See id.* Finally, Farrington's opinion and report were generated solely for the pending litigation. S*ee Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1317 (9th Cir.1995).

### c. Farrington Provides No Basis for Numerous Opinions

9.  As discussed above, Farrington's opinions are unreliable under *Daubert*. A close analysis of Farrington's report; however, quickly reveals that Farrington has no factual basis to support the conclusions he reached. The following are examples of opinions for which Farrington offers no supporting basis:

- Farrington opines that Plaintiff's commute was compensable because a custom or practice was in effect at the time of Plaintiff's commute that rendered it compensable after September 23, 2012. (Ex. A, p. 8, 17). Farrington admits that TSP changed its policy to discontinue inclusion of Plaintiff's commute to and from work in his compensable pay as of September 23, 2012. Farrington offers no basis to explain what custom or practice existed after September 23, 2012 so as to render Plaintiff's commute compensable. In fact, Plaintiff's own testimony suggests that he received TSP's policy notice no later than September 23, 2012. (Ex. D, Little Depo, p. 21). Clearly TSP was entitled to change its policy, at any time. *See Johnson v. RGIS Inventory*

*Specialists,* 554 F.Supp.2d 693, 707 (E.D. Tex. –Beaumont, 2007)(stating that the employer maintains the discretion to determine the limits of its custom or practice). Farrington simply reached a conclusion of law and ignored all facts and law to the contrary.

- Farrington asserts that commutes of more than one hour violate the FLSA and ECFA. (Ex. A, p. 11, 15). 29 U.S.C. § 254(a) states that "the use of an employer's vehicle for travel by an employee and activities performed by an employee…shall not be considered part of the employee's principal activities if the use of such vehicle for travel <u>is within the normal commuting area for the employer's business</u>…." Farrington makes zero attempt to identify TSP's normal commuting area, rather, he reaches the inexplicable conclusion that because Plaintiff commuted long distances, the time must be compensable. <u>Unfortunately for Farrington, the law is clear – commutes to work are non-compensable when the employee uses a company vehicle within the employer's normal commuting area.</u> 29 U.S.C. § 254(a). As Donna Lear's testimony made clear, Plaintiff's principle activity was the installation and service of video equipment at rigs, wherever the particular rig may be located. (Ex. F, Donna Lear Depo., pp. 16-17).

  Farrington's citations to Department of Labor opinions, which are non-controlling, offer no basis for his conclusion that Plaintiff traveled outside of his normal commuting area because he made no attempt to define TSP's normal commuting area. Moreover, because Plaintiff's commute within his normal commuting area is non-compensable, and TSP paid him for it anyway, Farrington has no basis to conclude that TSP violated the FLSA because TSP is entitled to offset Plaintiff's commute outside of the normal commuting area against the windfall Plaintiff received for his non-compensable travel.

  Interestingly, Farrington acknowledges that Plaintiff's commute would not be compensable if he was a passenger in the vehicle during extended commutes. (Ex. A, p. 16).

- Farrington next attempts to confuse the issue of good faith by blatantly misquoting the Lear's depositions and railing about TSP's mandatory 1 hour lunch break – which is not an issue before the Court. (Ex. A, pp. 25-9). First, Keith Lear testified that he relied on the Department of Labor Website ("DOL"), as well as consulted an attorney before creating TSP's new drive time overtime policy. (Ex. E, TSP Depo., p. 103.)

  The DOL website expressly provides that "time spent in home-to-work travel by an employee in an employer-provided vehicle, or in activities performed by an employee that are incidental to the use of the vehicle for commuting, generally is not "hours worked" and, therefore, does not have to be paid…." http://www.dol.gov/dol/topic/workhours/traveltime.htm. Notably, TSP's good faith conformity with, and reliance upon the DOL's interpretation is an absolute bar to Plaintiff's liquidated damages claim. 29 U.S.C. §259.

        Farrington's conclusions that TSP lacked good faith are not based on any fact, nor may Farrington's methodology be considered reliable because the methodology is flawed and was prepared in anticipation of litigation.

- Farrington concludes that "requiring employees to pay for vehicle maintenance and repairs would result in FLSA violations if it reduced employees below minimum wage for up to 40 hours in any workweek, or reduced either straight time or overtime compensation during any hours above 40 in any workweek (Ex. A, p. 30). Farrington does not allege that Plaintiff paid for any repairs, nor does he refer to any case law, ruling, or opinion, from anyone, which suggests that employers are not permitted to charge employees for their use of the company vehicle. (Ex. A, p. 23, 24). Farrington's unsupported opinion would prevent an employer from recovering the cost of damages negligently caused by an employee.

10. Farrington's methodology, if any, ignores unfavorable Federal Regulations, as well as misquotes sworn testimony. Farrington's opinions and testimony is categorically unreliable pursuant to the Daubert standards and the Court should strike him as an expert. Further, Plaintiff offers Farrington in a blatant attempt to bypass the judiciary's exclusive authority to instruct the jury on legal conclusions. *See, e.g., Hygh*, C.A.2 (N.Y.) 1992, 961 F.2d 359. Simply stated, Plaintiff intends to use Farrington to propound favorable, albeit inaccurate, conclusions of law.

    **d. Scott Barnes' Is Wholly Unreliable**

11. As discussed above, TSP agreed to no less than three (3) separate extensions of the Plaintiff's expert report deadline. That final deadline expired on January 28, 2013. Plaintiff offered Barnes to conclude that Plaintiff, who has a dual major in electrical engineering and computer sciences, yet somehow is unable to locate work, suffered $100,975 in lost wages between October 22, 2011 – April 29, 2013. (Ex. B, p. 2). Barnes' initial report failed to explain Barnes' methodology – it simply calculated Plaintiff's past lost wages based on his average weekly income while employed at TSP, which he calculated as $1,278.18. Barnes made no effort to explain his methodology, or to compare Plaintiff's pay rate at TSP with other employers, or to offset Plaintiff's "lost wages" by the unemployment pay that Plaintiff continues to receive. (*See id.* at 2, 6). More importantly, Barnes

fails to explain how Plaintiff's average "weekly" pay is in any way related to Plaintiff's income earned while at TSP because Plaintiff received pay on a bi-weekly pay period. (*See id.*).

12. Notwithstanding the discrepancies above, Barnes' opinion as to lost wages relies entirely on Plaintiff's average "income" while at TSP. It is uncontroverted that Plaintiff was one of TSP's highest paid hourly employees and that TSP disputes the hours Plaintiff billed during the course of his employment. (ECF No. 64). Barnes makes no attempt to justify Plaintiff's claimed average income with what Plaintiff would have earned with similar employers, or after reduction for federal income taxes. Barnes' opinion and report appear to run afoul of the Daubert standard. *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

13. In that regard, Barnes' report acknowledges that "the procedures applied in this case do not constitute and examination of any financial statements or financial data in accordance with generally accepted auditing standards," but claims that his "opinions contained in this report [are] based on an independent third party perspective, utilizing generally accepted methodologies for… economic damages… and the professional standards promulgated by the AICPA with respect to *litigation consulting* and valuation services." (*Id*. p. 4), (emphasis added). Barnes' opinion and expert report are unreliable because he wholly fails to explain his methodology and admits that his report was prepared in anticipation of litigation, i.e., in accordance with unspecified AICPA litigation consulting methodologies. (*Id*.). Notably, at no time does Barnes claim that this methodology has been exposed to peer review or what standards or controls he used, if any, to arrive at his conclusions. (*Id*.).

14. Barnes' "supplemental report," served January 31, 2013, three (3) days after the final expert report deadline expired, fairs no better. A copy is attached hereto as Exhibit "C." After being "informed" by an unspecified person that fewer weeks existed, Barnes inflates his prior calculations to now reflect that Plaintiff's average income was $1,333.75, for a total of $105,366 in

lost wages. (*Id.* at p. 2). Barnes does not identify with whom he spoke or explain how the "average weekly pay" periods were computed in light of TSP's bi-weekly pay periods. (*Id.*). <u>Notably, Barnes "supplemental" report uses the original weekly calculation of $1,278.18 to calculate Plaintiff's "front pay."</u>

15. Neither of Barnes' reports makes any attempt to explain the methodology used to calculate Plaintiff's "front pay." (*See* Ex. B, C). Barnes simply "assumed the historical weekly wages of $1,278.18 would continue into the future." Exhibit C, p. 6. Barnes opinion is unreliable because he wholly fails to 1) explain the weekly vs. bi-weekly computation, 2) examine Plaintiff's pay at TSP in comparison to similar employers, and/or 3) include Plaintiff's unemployment in either the lost wage or front wage computation. Barnes apparently assumes, without any support, that Plaintiff will continue to be unemployed for an unspecified amount of time and that he would earn the same rate of pay in the future. In support thereof, and without any explanation as to methodology, Barnes simply attaches a chart that contains a list of unexplained numbers.

  **e. Barnes' report does not satisfy the Daubert standard**

16. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

17. Barnes' opinion and report is a subjective, conclusory approach that cannot be assessed for reliability because Barnes failed to identify his methodology with respect to even the

basic components of a lost wage analysis. Specifically, Barnes failed to include any analysis Plaintiff's pay at TSP in comparison to the industry, Plaintiff's continued receipt of unemployment payments, Plaintiff's wages after taxes, and/or the flexible nature of Plaintiff's hourly employment. (*See* Ex. B, C). Moreover, Barnes does not identify with whom he spoke, after Plaintiff's expert report deadline passed, to determine that Plaintiff now allegedly suffered an additional $4,389.78 in lost wages for the identical period. Barnes, like Farrington, appears to be a hired gun that Plaintiff brought in to assert opinions that are wholly unexplained and which are therefore unreliable.

### III.   CONCLUSION:

18.   As the 5th Circuit noted in *Moore v. Ashland Chem. Inc.*, the proponent of the expert's testimony bears the burden of first proving its admissibility. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir.). Because of the unique effect of an expert witness and the advantageous position he holds at trial, the proponent of the evidence must demonstrate that "the principle supports what it purports to show." *United States v. Posado,* 57 F.3d 428, 433 (5th Cir.1995). This ensures that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at, 119 S.Ct. at 1176. The testimony must be "more than belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

19.   Neither Farrington nor Barnes' opinions meet the reliability factors established in *Daubert*. Specifically, the methodologies are wholly unexplained, they have not been subjected to peer review, and the opinions contain fundamental methodical errors. In that regard, the 5th Circuit Court of Appeals recently upheld a magistrate judge's decision to exclude the testimony of experts where the expert's opinion did not include a baseline or account for other potential factors in his damage analysis. *Dart v. Kitchens Bros. Mfg. Co.*, 253, Fed. Appx. 395, 398 (2007)(not selected for publication). Moreover, Farrington's legal opinions will confuse the jury. The Court should accordingly GRANT Defendants' Amended Motion to Strike Plaintiff's experts

PRAYER:

The Defendants, Technical Specialty Products, LLC, Keith Lear, and Donna Lear, respectfully pray that the Court GRANT this Conformed, Amended Motion to Strike Plaintiff's experts. The Defendants further pray for all such and other further relief to which they may show themselves to be justly entitled.

By: /s/ H. Peyton Inge IV
H. Peyton Inge IV
State Bar No. 24053279

**CHAMBLEE, RYAN, KERSHAW & ANDERSON, P.C.**
2777 Stemmons Freeway, Suite 1157
Dallas, Texas 75207
(214) 905-2003
(214) 905-1213 (Facsimile)

**Charles S. Cantu**
*Attorney-in-Charge*
Texas Bar No. 24044911

Charles S. Cantu, Attorney at Law
Post Office Box 150331
Arlington, Texas 76015
214.506.3115 - direct
817.704.4504 -facsimile

**ATTORNEYS FOR TECHNICAL SPECIALTY PRODUCTS, LLC, KEITH LEAR AND DONNA LEAR, DEFENDANTS.**

CERTIFICATE OF CONFERENCE

I do hereby certify that on January 30, 2013, I spoke with Plaintiff's counsel; however, no agreement could be reached which required the submission of this motion.

/s/ H. Peyton Inge IV
**H. Peyton Inge IV**

## CERTIFICATE OF SERVICE

I do hereby certify that on this 7th day of February, 2013, a true and correct copy of the above and foregoing document has been forwarded in accordance with the Federal Rules of Civil Procedure to all counsel of record via electronic service.

                                                  */s/ H. Peyton Inge IV*
                                                **H. Peyton Inge IV**