IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DALE LITTLE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-00717 |
| | § | **JURY** |
| TECHNICAL SPECIALTY PRODUCTS LLC, ET AL | § | |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
OBJECTION AND AMENDED MOTION TO STRIKE EXPERTS**

Plaintiff **Dale Little** files his Response to Defendants' Objection and Amended Motion for Strike Experts Brian Farrington and Scott Barnes (Doc. 76) as follows:

**Background**

1. Plaintiff asserts claims of unpaid overtime compensation and retaliatory discharge under the Fair Labor Standards Act ("FLSA"). He seeks as his damages his unpaid overtime compensation, his lost wages due to his retaliatory discharge (including both back pay and front pay), compensatory and punitive damages, liquidated damages under the FLSA, and attorney's fees. *See Plaintiff's Original Complaint (Dkt. 1)*.

2. In support of his claims, Plaintiff designated: (1) Brian Farrington to testify regarding Defendants' failure to pay overtime in compliance with the FLSA; and (2) Scott A. Barnes to testify regarding Plaintiff's lost wage damages. *See Plaintiff's First Supp. Rule 26(a)(2) Disclosures (Jan. 28, 2013) (attached as **Exhibit 1**)*. Mr. Farrrington's expert report ("Farrington "Report") is attached as **Exhibit 2**. Mr. Barnes' expert report ("Barnes Report") is attached as **Exhibit 3**.

3. As their reports indicate, they are both extremely qualified and experienced experts in their respective fields. Mr. Farrington is a former Compliance Officer and Assistance District Director of the Department of Labor, with years of experience investigating and consulting regarding wage and hour issues. *Farrington Report at 2-3*. Mr. Barnes is a Certified Public Accountant who is also certified in financial forensics. He has years of experience in providing complex and sophisticated consulting services with respect to accounting, economic damages, forensic analysis and business valuation. *Barnes Report at 2-4 & attachment 1*.

4. On January 31, 2013, just a few days after his original report, Mr. Barnes' provided a supplemental report ("Supp. Barnes Report") , in which he corrected an error in calculating Plaintiff's average weekly wage. *See Supp. Barnes Report (attached as **Exhibit 4***). Specifically, Mr. Barnes corrected in his calculation the number of workweeks Plaintiff worked at TSP, from 24 to 23. *Id*.

5. Defendants' filed their Objections and Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes on February 7, 2013. (Dkt. 76). To clarify an issue first raised by Defendants in their Motion, Mr. Barnes issued a second supplemental report (2nd Supp. Barnes Report) on February 25, 2013. *See 2nd Supp. Barnes Report (attached as **Exhibit 5***). This report merely confirmed that Plaintiff's payroll and time sheet records supported the number of weeks Plaintiff worked at TSP and on which his average weekly wage was based, and also corrected a typographical error pointed out by Defendants. *Id*.

## Argument and Authorities

A. **Defendants' Motion is Premature Prior to Trial or a Preliminary Hearing.**

Defendants ask this Court to rule on the admissibility of Plaintiff's expert testimony based solely on the expert reports provided as part of his Rule 26(a)(2) disclosures during

discovery. However, this Motion is premature and should be reserved until the time of trial, when the Court will be better able to make its admissibility determinations in the proper context. The purpose of the expert disclosures under Rule 26(a)(2) is to permit the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *See* Fed. R. Civ. P. 26 (adv. comm. note). Plaintiff's disclosures clearly served their purpose under Rule 26(a)(2). However, while the expert reports disclose their opinions and the bases and reasons therefore as required by Rule 26(a)(2), they should not be viewed in isolation in ruling on admissibility of their testimony at trial without permitting Plaintiff the opportunity to present the experts' testimony to the Court, either during trial or in a preliminary hearing, so that the Court can perform the necessary fact-finding to make any admissibility determinations under Fed. R. Evid. 702. As the Fifth Circuit instructed in *Moore v. Ashland Chemical Co.*, in performing its gate-keeping function a trial court should conduct preliminary fact-finding under Fed. R. Evid.. 104(a):

> Procedurally, *Daubert*[1] instructs us that the district court must determine admissibility under Rule 702 by following the directions provided in rule 104(a). Rule 104(a) requires the judge to conduct preliminary fact-finding and to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[2]

Indeed, courts typically rule on challenges to the admissibility of expert testimony only after having reviewed the expert's proposed testimony during trial or a preliminary hearing outside the jury's presence permitting full development of *Daubert* issues. *See, e.g., Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) ("The district judge conducted a

---

[1] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

[2] *Moore*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)).

*Daubert* hearing outside of the presence of the jury wherein he heard the proffered testimony of Dr. Stevens .... "); *Hughes v. International Diving and Consulting Services, Inc.*, 68 F.3d 90, 92 (5th Cir. 1995) (trial court ruled on admissibility of expert testimony at trial instead of conducting a Rule 104(c) hearing).

Similarly, this Court should reject as premature Defendants' challenge to the entire admissibility under Rule 702 of Plaintiff's proposed expert testimony based solely on the expert reports. The Court has not heard their testimony through direct examination, nor have Defendants presented any cross-examination or even taken their depositions. The Court will be better able to make such admissibility determinations based upon a fully developed record at the time of trial.

**B.    Defendants' Objections Should be Overruled.**

Defendants make numerous objections to the admissibility of Mr. Farrington's and Mr. Barnes' expert testimony. The Court should reject Defendants' objections and deny their motion, and instead allow the jury to determine the weight to be given their testimony after examination and argument by counsel. As the advisory committee notes to Rule 702 state, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 adv. comm. note (2000 amendments). The *Daubert* case did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *U.S. v. 14.38 Acres of Land Situated in Leflore County, Miss.*, 80 F.3d 1074, 1075 (5th Cir. 1996). As the Supreme Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595; *see also* Fed. R. Evid. 703 adv. comm. note (2000 amendments).

### 1. Defendants' Objections to Mr. Farrington's Testimony Should Be Overruled.

#### a. Mr. Farrington's Expert Opinions Are Reliable.

Defendants argue that Mr. Farrington's expert opinions are "unreliable" under *Daubert* because they allegedly are not capable of scientific verification, have not been evaluated in light of the potential rate of error, and weee not subject to peer review. *Motion at 5*. However, Defendants are trying to insist on an overly rigid application of all the *Daubert* factors, when that is clearly not necessary to satisfy the standard for reliability.

In *Daubert*, the Supreme Court provided several "general observations" or factors for the courts to consider in evaluating the reasoning or methodology underlying the expert's testimony. *Daubert*, 509 U.S. at 593. However, the Supreme Court subsequently explained that, while these factors may be considered when they are "reasonable measures" of reliability, they are not exclusive, and the court has broad latitude to determine when they apply. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999). Thus, the Fifth Circuit has held that "[t]he *Daubert* factors are non-exclusive and need not be rigidly applied in every case." *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 406 (5th Cir. 2000) (expert opinion based on personal observations and general expertise admissible, and peer-reviewed research is not required); *see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (expert testimony not unreliable just because it does not rely on published, peer-reviewed research). "[W]hether *Daubert* 's suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir.1999). Under this flexible approach, for certain types of claims "the expert's testimony [can

be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Mr. Farrington's proposed expert testimony is reliable. Mr. Farrington is not testifying about novel scientific theories that would require peer-reviewed research, scientific verification, implicate potential error rates. Rather, he will testify regarding Defendants' overtime policy and whether it would result in the failure to count certain travel time that would qualify as hours worked under the regulations and enforcement policies of the Department of Labor Wage and Hour Division. *Farrington Report at 2*. Mr. Farrington has substantial expertise in this field, which support his opinions. He is a former Compliance Officer and Assistance District Director of the Department of Labor, in which capacities he conducted and supervised hundreds of similar investigations. *Farrington Report at 2*. Since 1989, he has privately consulted and advised clients on wage and hour matters. *Farrington Report at 3*. Mr. Farrington has also published on wage and hour compliance, and testified in legal proceedings involving these matters. *Farrington Report at 4-6*. In this case, Mr. Farrington explained that he adapted the DOL's investigative techniques—in which he has expertise, as noted above—by reviewing the parties' depositions, discovery responses, Defendants' employment policies, and Defendants' time and payroll records applicable to Plaintiff. *Farrington at 3-4, 6*. Applying this methodology, Mr. Farrington concludes, among other things, that Defendants' overtime policy would, and did, result in failing to count as "hours worked" certain travel time that is required to be counted. Farrington Report at 6-22, 30. He also calculates how Plaintiff's overtime should properly be calculated. *Farrington Report at 20-22*. Mr. Farrington's expertise—reached through years of experience, training and education—combined with his review and analysis of the facts and data in this case, clearly establish the reliability of his opinions.

Defendants also argue that Mr. Farrington's testimony is unreliable because is based on "flawed theories or facts." *Motion at 5*. Defendants fail to specify which particular theory or fact is supposedly incorrect or flawed. To the contrary, Mr. Farrington's facts supporting his opinions come straight from the evidentiary record in his case, including the parties' depositions, interrogatory answers and document production. *Farrington Report at 3-4*. As Rule 703 makes clear, "[a]n expert may base an opinion on facts or date in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Mr. Farrington disclosed in his report the facts supporting his opinions. Defendants are free, of course, to challenge Mr. Farrington's factual assumptions through cross-examination, and the jury is free to credit, or not to credit, his credibility and the reliability of the facts on which he relied. *Skidmore*, 188 F.3d at 618. Defendants' argument should be rejected.

Finally, Defendants complain that Mr. Farrington's report was prepared solely for this litigation. *Motion at 5*. However, this is no basis for excluding his testimony. The case Defendants cite supposedly in support of their position confirms this: "That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture." *Daubert*, 43 F.3d at 1317. As noted above, Mr. Farrington's expert opinions are reliable. Defendants' objection should be overruled.

> b. **Mr. Farrington's Testimony Does Not Consist of Impermissible Legal Conclusions.**

Defendants contend that Mr. Farrington's testimony should be rejected because it consists merely of legal conclusions. *Motion at 3-4*. This is incorrect. Rule 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Mr. Farrington's testimony and opinions offers useful guidance to the jury of the context in the compensability of travel time must be considered, and how Defendants'

overtime policy operated to exclude Plaintiff's travel time from counting toward his overtime. *Farrington Report at 6-20.* In addition, Mr. Farrington will also testify as how the calculations for counting Plaintiff's work hours were, and should have been, performed. *Farrington Report at 20-22*. This will greatly assist the jury in determining the amount of overtime Plaintiff is owed.

While Mr. Farrington's expert testimony may reach to ultimate issues that the jury will have to determine, this does not preclude his testimony. Rule 704 of the Federal Rules of Evidence permits expert testimony as to ultimate issues: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). As the Advisory Committee explained: "[T]he so-called 'ultimate issue' rule is specifically abolished by [Rule 704(a)] .... The basis usually assigned for the [abolished] rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric."' Fed. R. Evid. 704 (adv. comm. Note). An expert's opinion on so-called "ultimate issues" is clearly admissible where the expert's testimony includes the bases for his conclusions and the conclusions are supported by the evidence, since there is little risk that the expert's testimony will supplant the jury's independent exercise of common sense. *See United States v. $9,041,598.68*, 163 F.3d 238, 254-55 (5th Cir. 1999); *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308 (l0th Cir. 1998) (expert testimony admissible, where the expert explained the basis for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions). This objection should be overruled.

      c.     **Mr. Farrington's Opinions Are Supported by the Facts.**

Defendants also contend that certain of Mr. Farrington's testimony are without factual basis. *Motion at 5-7*. This argument must be rejected. As Mr. Farrington noted in his report, he reviewed and considered the facts in this case, including Defendants' policies, its payroll and

time sheets records for Plaintiff, the parties' respective discovery responses, and the parties' deposition testimony. *Farrington Report at 3-4, 6.* Throughout his report discussing his opinions, Mr. Farrington details specific facts supporting his opinions. *See Farrington Report at 8-29.* Defendants quibble with Mr. Farrington over some of the inferences to be drawn from various facts. However, because experts can reach different conclusions based on competing versions of the facts, courts should not exclude an expert's opinion simply because the court believes another version of the facts or considers the evidence doubtful or tenuous. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008); *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). The factual basis of an expert's opinion generally relates to the weight a jury should give that opinion and the expert's credibility, *not* to the testimony's admissibility. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 531-32; *see Primrose Oper. Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (questions about the bases and sources of expert's opinion generally affect the weight to be assigned to that opinion rather than its admissibility, and should be left for the jury's consideration). Accordingly, this objection should be overruled.

        **2.**     **Defendants' Objections to Mr. Barnes' Testimony Should Be Overruled.**

Defendants complain that Mr. Barnes' methodology is unreliable. *Motion at 7-10.* This objection is without merit. Mr. Barnes clearly explained his methodology for determining Plaintiff's lost wages, and he used the methodology that is prescribed by law.

Plaintiff can recover his lost wages—both back pay and front pay—caused by Defendants' retaliatory discharge of him 29 U.S.C. § 216(b); *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 483 (5th Cir. 2007); *Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006). Back pay is the amount Plaintiff would have received but for Defendants' retaliatory discharge, commencing on the date the retaliatory discharge causes injury to the date of judgment.

*Palasota*, 499 F.3d at 482-83. An award of front pay is meant to compensate the plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination. *Id*. at 490. As a prospective make-whole remedy, front pay at best "can only be calculated through intelligent guesswork." *Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir. 1986). The district courts are given wide latitude in determining front pay. *Id*. The Fifth Circuit has held likewise with respect to back pay: "Two general premises apply to the computation of a back pay award: (1) unrealistic exactitude is not required, and (2) uncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating employer." *Shipes v. Trinity Indus.*, 987 F.2d 311, 315 (5th Cir. 1993).

In calculating a front pay award, the jury must consider the expected future damages caused by the defendant's wrongful conduct from the date of judgment to retirement. *Blum v., Witco Chem. Corp.*, 829 F.2d 367, 374 (3rd Cir. 1987). Courts indicate that the plaintiff's damages should be calculated by taking the present value of the difference between his current salary (if any) and his previous salary at the defendant, for the length of time that the court determines the defendant should be liable. *Fournerat v. Beaumont Indep. Sch. Dist.*, 6 F.Supp.2d 612, 614 (E.D. Tex. 1998) (Schell, C.J.). As Judge Schell observed, after the court determines the relevant length for front pay, "the rest of the equation is mathematics." *Id*. at 614.

Expert testimony is often used in assisting the court and jury in determining lost wages. *See, e.g., Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir.1990). Indeed, forensic accountants are often used to conduct damages analyses. *See, e.g., U.S. v. Hammond*, 201 F.3d 346, 350 (5th Cir. 1999). Trial courts have consistently rejected motions to exclude similar expert testimony on back pay and front pay in employment cases. *See, e.g.*, *Osborn v. Computer*

*Sciences Corp.,* 2005 WL 5881949 (N.D. Tex. Oct. 20, 2005); *Mata v. Lowe's Home Centers, Inc.*, 2006 WL 5159392 (W.D. Tex. Feb. 09, 2006); *Florer v. Electronic Data Systems Corp.*, 2004 WL 1562851 (N.D. Tex. July 13, 2004); *Owens v. Excel Management Services, Inc.*, 2003 WL 22718002 (N.D. Tex. Nov. 10, 2003).

Mr. Barnes' calculations of Plaintiff's back pay and front pay are entirely consistent with the methods approved by the cases cited above. Mr. Barnes is a CPA who is also certified in financial forensics. *Barnes Report at 3*. He specializes in providing complex and sophisticated commercial litigation consulting services with respect to accounting, economic damages, forensic analyses and business valuation. *Barnes Report at 2*. He formulated his conclusions using generally accepted approaches and methodologies. *Barnes Report at 4*.

*Back Pay*. Mr. Barnes's methodology for calculating Plaintiff's back pay is set forth in his report. *Barnes Report at 5-6; Supp. Barnes Report at 2*. The methodology is clear: Mr. Barnes determined Plaintiff's average weekly wages at TSP, and then calculated his back pay using that average weekly wage for the 79 weeks between his date of discharge and the expected trial date.[3] This is a straightforward calculation. *See Supp. Barnes Report, attachment 3*.

*Front Pay*. Mr. Barnes also set forth his front pay methodology in his report. *Barnes Report at 6; Supp. Barnes Report at 6-7*. Mr. Barnes used Plaintiff's average weekly wages at TSP to determine his lost front pay had he remained employed. He then discounted these lost wages to present value as of the trial date. He also adjusted the front pay calculation to account

---

[3] Mr. Barnes' Supplemental Report corrected an error in determining Plaintiff's average weekly wages at TSP. He had originally used 24 weeks to calculate Plaintiff's average weekly compensation, but corrected this to 23 weeks in his Supplemental Report. *See Supp. Barnes Report at 2*. Mr. Barnes confirmed through Plaintiff's payroll and time sheet records that Plaintiff worked 23, not 24 weeks at TSP. *See 2nd Supp. Barnes Report at 2*.

for Plaintiff's estimated work life expectancy. His calculations are set forth in Attachment 4. *See Supp. Barnes Report, attachment 4.*

As is evident, Mr. Barnes' methods of calculating Plaintiff's back pay and front pay are set out in his report and are fully consistent with the method of calculating lost wages that are prescribed by the courts. As with Defendants' objections to Mr. Farrington's opinions, Defendants improperly seek to impose a rigid application of various *Daubert* factors that have little, if any, application to the nature of expert testimony that Mr. Barnes will provide. *Mata*, 2006 WL 5159392, at *4 ("While these are factors that the Court may consider under *Daubert*, there is no requirement that an economist meet each and every factor in order to be found reliable."). Thus, Defendants' general complaints that his conclusions are somehow unreliable are without merit and should be rejected.

Defendants also object that Mr. Barnes did not compare Plaintiff's pay rate at TSP with that of other, similar employers. *Motion at 7-9*. However, Defendants cite no authority for this complaint. More significantly, Defendants fail to explain how the pay rates at other, similar employers are relevant in any way to Plaintiff's lost earnings resulting from his retaliatory discharge at TSP. Such a comparison is not required by any of the applicable case law. The relevant damages issue in is what Plaintiff's compensation was *at TSP*, and that is what Mr. Barnes used in determining Plaintiff's lost wages.

Defendants further complain that Mr. Barnes' calculations did not reduce his lost earnings to account for federal income taxes. *Motion at 8*. Defendants cite no authority that such a reduction is required, and indeed the case law cited above does not require such a reduction in back pay and front pay calculations. If any judgment Plaintiff obtains is subject to

taxation, then obviously he would report such payment to the IRS and pay any taxes that may be required. But that does not reduce the award to be made by the jury in the first place.

Defendants also object that Mr. Barnes did not offset Plaintiff's unemployment benefits in his damages calculations. *Motion at 7-9*. However, he is not required to do so under the law. Courts are well within their discretion to refuse to deduct unemployment benefits from back pay and front pay awards. *Johnson v. Chapel Hill Independent School District*, 853 F.2d 375, 382 (5th Cir. 1988) (upholding district court's refusal to deduct unemployment compensation benefits from back pay and front pay award). *Matherne v. Wilson*, 851 F.2d 752, 762 (5th Cir. 1988); *Martin v. Anslinger, Inc.*, 794 F.Supp. 640, 648 n.13 (S.D. Tex. 1992). Mr. Barnes' damages calculations are consistent with the law.

Defendants next object that Mr. Barnes, in his supplemental report, changed Plaintiff's average weekly wage from $1278.18 to $1,333.75. *Motion at 8-9*. Mr. Barnes originally calculated Plaintiff's average weekly compensation to be $1,278.18 using the incorrect number of weeks that Plaintiff worked at TSP. In his Supplemental Report, issued just a few days after his original report, Mr. Barnes corrected the error and revised his calculations by using the correct number of weeks. As Mr. Barnes explains, Plaintiff actually worked 23 weeks, not 24 weeks. This correction changed Plaintiff's average weekly wages to $1,333.75. *Supp. Barnes' Report at 2-3, 6-7*. To allay Defendants' alleged concern about the basis for this change, Mr. Barnes further clarified that he reviewed TSP's payroll and time sheet records for Plaintiff, and that they confirm that Plaintiff worked a total of 23 weeks at TSP, from May 13, 2011 through October 21, 2011. *2nd Supp. Barnes' Report at 2 & attachment 2 (referring to payroll-time sheet records [TSP 031-0176])*. Defendants do not contend that Plaintiff's average weekly compensation is calculated incorrectly, or that Mr. Barnes is wrong in using 23 weeks as the

number of weeks worked; rather, Defendants appear only to complain that it was not adequately explained. Their objection should be overruled.

Defendants further object to Mr. Barnes' use of Plaintiff's average weekly wages to perform his calculations, as opposed to using a bi-weekly wage since he was paid every two weeks. *Motion at 15*. Defendants objection is nonsensical, and Defendants' wholly fail to explain how the distinction would make one bit of difference in the calculations. To the contrary, using a bi-weekly average would using a weekly average wage provides greater accuracy, since Plaintiff worked an odd number of weeks (23 weeks) during his employment at TSP. *See Second Supp. Barnes Report at 2*. In sum, Mr. Barnes' expert opinions are reliance and admissible. Defendants' various objections to the admissibility of his testimony are without merit and should be overruled.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Objections and Amended Motion to Strike Experts Brian Farrington and Scott Barnes.

Respectfully submitted,

JENKINS & WATKINS,
A Professional Corporation

/s/ Jason E. Winford
David Watkins
Texas Bar No. 20922000
Jason E. Winford
Texas Bar No. 00788693
2626 Cole Avenue, Suite 200
Dallas, Texas 75204
(214) 378-6675 - Office
(214) 378-6680 - Telecopier
**ATTORNEYS FOR PLAINTIFF**

## Certificate of Service

I hereby certify that on February 25, 2013 I electronically filed the foregoing document in compliance with Local Rule CV-5. As such, this document was served on all counsel by electronic service.

/s/ Jason E. Winford