# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DALE LITTLE | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-00717 |
| | § | Judge Mazzant |
| TECHNICAL SPECIALTY PRDUCTS, | § | |
| LLC, ET. AL. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion for Complete, or in the Alternative, Partial Summary Judgment (Dkt. #64), Plaintiff's Motion for Partial Summary Judgment (Dkt. #70), and Defendants' Objection and Conformed, Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes (Dkt. #76).

## BACKGROUND

On October 31, 2011, Plaintiff filed his original complaint asserting claims against Defendants Technical Specialty Products, LLC ("TSP"), Keith Lear ("Mr. Lear"), and Donna Lear ("Ms. Lear") (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") (Dkt. #1). Specifically, Plaintiff asserts that Defendants violated the FLSA by failing to pay overtime pay rates required by the FLSA for hours worked in excess of forty (40) hours in a workweek, and that Defendants discharged Plaintiff in retaliation for voicing an oral complaint about the new overtime policy implemented by Defendants. *Id.* Plaintiff requests judgment against Defendants for the amount of unpaid overtime compensation, liquidated damages for unpaid overtime, or, in the alternative, pre-judgment interest from the date the wages became due until the date judgment is entered, reasonable and necessary attorneys' fees, post-judgment interest, reinstatement, injunctive relief, payment of lost wages and future wages for retaliation, and compensatory and punitive damages. *Id.*

1

TSP is a Louisiana limited liability company that provides oilfield support services; specifically, TSP installs and services video camera systems on oil rigs.  TSP is based in Baton Rouge, Louisiana, where its offices are located.  Keith Lear is the founder, owner, managing member, general manager, and CEO of TSP.  Donna Lear is a member of the limited liability company, its registered agent, and the operations manager of TSP's day-to-day operations.

Plaintiff was hired by TSP in May of 2011 as a Field Service Technician.  Plaintiff was based out of his home in McKinney, Texas, and was assigned to drive to oil rig sites where he installed and serviced video camera systems.  TSP provided Plaintiff with a company pickup truck, company iPhone, and company credit card for business expenses.  Plaintiff was required to travel to various oil rigs, which were located in Texas, Louisiana, New Mexico, and Oklahoma.  Plaintiff was paid on an hourly basis, and his regular rate of pay was $23.00 per hour.  His overtime rate of pay was $34.50 per hour, which is one-and-one-half (1 ½) times his regular rate of pay.

Prior to September 23, 2011, TSP's practice was to count all driving time and time spent working on the oil rigs as work time.  All of this time was included in calculating regular and overtime pay.  On September 23, 2011, TSP began a new overtime policy that excluded the first and last commute of the day from its overtime calculations.  However, Plaintiff was still paid at his regular rate of pay for those hours spent driving.

On September 23, 2011, TSP requested Plaintiff sign a policy notice indicating his knowledge and agreement with the new overtime policy.  However, Plaintiff disagreed with the policy, and noted his disagreement on the policy notice itself.  Plaintiff also complained to Ms. Lear that he disagreed with the policy.

On October 21, 2011, Plaintiff was discharged.  Plaintiff contends that he was discharged in retaliation for his disagreement with the new overtime policy.  Plaintiff asserts that Ms. Lear stated that she heard he was planning to sue the company over the policy, and he was fired for this reason.  Defendants contend that Plaintiff was fired for a variety of reasons, including the fact that his timesheets reflected an "abnormally large amount of drive time to and from work," his drive times between identical points varied widely on different days, and his drive time far exceeded the hours other field technicians required to drive between various points.

On January 18, 2013, Defendants filed their Motion for Complete, or in the Alternative, Partial Summary Judgment (Dkt. #64).  Plaintiff filed his response on February 4, 2013 (Dkt. #72).  On February 12, 2013, Defendants filed a reply (Dkt. #78).

On January 23, 2013, Plaintiff filed his Motion for Partial Summary Judgment (Dkt. #70).  Defendants filed their response on February 6, 2013 (Dkt. #74).  On February 18, 2013, Plaintiff filed a reply (Dkt. #79).  On February 20, 2013, Defendants filed an amended response (Dkt. #80).

On February 7, 2013, Defendants filed their Objection and Conformed, Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes (Dkt. #76).  Plaintiff filed his response on February 25, 2013 (Dkt. #81).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.   *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).   The substantive law identifies which facts are material.   *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.   *Id.* at 247.   If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."   *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).   But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.   *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).   Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."   *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).   The nonmovant must adduce affirmative evidence.   *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence.   *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

A.      *Defendants' Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes (Dkt. #76)*

Defendants move to strike the expert testimony of Plaintiff's experts Brian Farrington ("Farrington") and Scott Barnes ("Barnes").   Defendants contend that Farrington improperly

4

reaches legal conclusions, Farrington's opinions are incapable of verification by any scientific method, and Farrington's opinions are unreliable because his opinions do not fit the facts of the case.  Defendants argue that Barnes' initial report failed to explain his methodology, and reaches unreliable calculations of Plaintiff's damages.

In *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 590-93 (1993), the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exhaustive list of factors that courts may use in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential

rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert,* 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

"When expert testimony has been challenged, it is incumbent upon the court to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant." *Allison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 (E.D. Tex. May 21, 2003). The court must also articulate its basis for admitting expert testimony. *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001). To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et. alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

First, Defendants challenge Farrington's report on the basis that it contains numerous legal conclusions. Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); see also *Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673. In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted). The Court notes that Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, Rule 704 does not open the door to all opinions. *Owen*, 698 F.2d at 240. The rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Id.*

After a review of Farrington's expert report, the Court finds that it consists almost entirely of legal analysis and conclusions. Farrington reviews in detail statutes, case law, and facts relevant to his analysis to reach his conclusions as to whether Defendants' policies violate the FLSA or not. This is not properly within the scope of expert testimony, and the Court finds that the expert report of Brian Farrington should be stricken in its entirety.

Defendants next challenge the expert report of Barnes on the basis that Barnes' methodology is unexplained in the expert report and is unreliable.  Defendants specifically challenge Barnes' calculation of Plaintiff's average weekly pay on the basis that Plaintiff was paid on a bi-weekly pay period.  Defendants also assert that Barnes' calculations do not satisfy the *Daubert* factors for reliability.

After reviewing Barnes' expert report, supplemental expert report, and second supplemental expert report, the Court finds that Barnes methodology is reliable.  It is clear that Barnes uses Plaintiff's submitted timesheets and pay stubs to calculate his average weekly pay for the 23 weeks he worked at TSP.  He then used the average weekly wage for the 79 weeks between the date of discharge and the expected date of trial to calculate back pay.  For his front pay calculations, Barnes uses Plaintiff's average weekly pay to determine lost wages Plaintiff would have received had he remained employed.  He adjusted this pay based on estimated work life expectancy.  Therefore, the Court finds that Barnes' methodology is described in his expert report in sufficient detail to indicate how he arrived at his conclusions.

Defendants also contend that Barnes' conclusions are unreliable because they are based on an average weekly rate, and Plaintiff was paid bi-weekly.  However, the Court finds this to be irrelevant to the reliability of Barnes' calculations.  Barnes' calculations of a weekly rate for Plaintiff's back pay and front pay is permissible, and can be easily adjusted to reflect bi-weekly wages if necessary.

Finally, Defendants argue that Barnes' methodology does not satisfy the *Daubert* factors for reliability.  The *Daubert* factors are (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether

the theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. However, the *Daubert* factors are not "a definitive checklist or test," and, as the Court has emphasized, the *Daubert* framework is "a flexible one." *Daubert,* 509 U.S. at 593. Defendants' argument is puzzling to the Court because Barnes' methodology appears to be based on basic mathematical calculations. As such, the expert's technique can be tested and verified for its accuracy, and it is generally accepted as a reliable form of conducting damages calculations. "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Allison*, 2003 WL 25685229, at *1 n.1 (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596). Of course, Defendants are free to challenge Barnes' calculations, methodology, and conclusions at trial during cross-examination. Thus, the Court finds that Defendants' objections to the expert report and testimony of Barnes are overruled.

Based on the foregoing, the Court finds Defendants' Objection and Conformed, Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes (Dkt. #76) is granted in part and denied in part.

B.    *Plaintiff's Claims for Overtime Compensation Under the FLSA*[1]

The FLSA mandates that "no employer shall employ any of his employees… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times

---

[1] Defendants object to several paragraphs contained in Plaintiff's affidavit, stating that the contents are conclusory and Plaintiff lacks personal knowledge of the statements contained therein. To the extent the Court relied on these statements in deciding the motion for summary judgment, the Court finds Defendants' objections are OVERRULED.

the regular rate at which he is employed."   29 U.S.C. § 207(a)(1); *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (2005).

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that [he] has performed work for which [he] alleges [he] was not compensated." *Harvill*, 433 F.3d at 441 (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).

> An employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88.  The evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked.  *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir. 1979).  "If the employer's records are 'proper and accurate,' the employee may rely on these records; if the employer's records are 'inaccurate or inadequate,' the employee may produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. 2005) (internal citation omitted).  "If the employee does so, the employer must 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn for the employee's evidence.'" *Id*.

To meet his burden to show that he performed work for which he was not compensated, Plaintiff provides his handwritten timesheets and copies of the checks provided to him by TSP. In response to those records, TSP argues that Plaintiff's timesheets do not accurately depict the

amount of hours worked by Plaintiff.  In support of this argument, TSP provides the affidavit of

Holly Paola, who is TSP's human resources department (Dkt. #75, Exhibit C at ¶ 1).  Ms. Paola

indicates that TSP requires their technicians to accurately record work time, as well as commute

time, on their timesheets, which are submitted once per two-week pay period.  *Id*. at ¶ 7.  Ms.

Paola indicates that she and Ms. Lear had some problems with the timesheets submitted by

Plaintiff.  Particularly, she states that the timesheets inaccurately recorded commute times.  *Id*.

Ms. Paola states:

> I also questioned Little about hours recorded on his time sheets on numerous
> occasions because Little's commutes dramatically exceeded the expected
> commute time between his home and the cities where he spent the night before
> performing work the following morning.  Specifically, for example, the shortest
> highway route between Dallas, Texas and Midland, Texas is 330 miles.  On
> October 3, 2011, Little billed eight (8) hours for his commute to Midland, which
> reflects an average speed of less than 42 miles per hour.  Little submitted two (2)
> different time sheets seeking payment for his October 19, 2011, commute
> between Dallas and Midland.  Little's first timesheet for October 19, 2011,
> charged TSP 7 hours.  Curiously, Little's second October 19, 2011, time sheet
> billed TSP for 8.5 hours for the exact same commute.  TSP questioned the
> discrepancy, but paid Little for the larger 8.5 hour commute anyway.  Notably,
> and 8.5 hour commute between Dallas and Midland required Little to maintain an
> average speed of less than 39 miles per hour….
>
> As additional examples, Little billed TSP 9 hours to travel from Dallas to work in
> Lubbock, Texas, a 345 mile commute, on October 10, 2011.  Little's average
> speed was less than 39 miles per hour according to his time sheet.  On September
> 13, 2011, Little billed TSP 11 hours to commute from McKinney to Pecos, Texas,
> a 460 mile commute, which reflects an average speed of less than 42 miles per
> hour.  Notably, Little eliminated 2 whole hours from his commute home from
> Pecos on September 25, 2011, when he billed TSP for 9 hours.
>
> Little billed TSP 8 hours to commute from Dallas to a company called Bandera,
> in Abilene, Texas, a roughly 200 mile commute, on September 22, 2011.  Little
> submitted a second time sheet for the same day, in which he billed TSP 10 hours
> for the same commute, which reflects an average speed of 20 miles per hour.  TSP
> paid Little for BOTH time sheets, the first of which resulted in a prepayment of
> overtime too Little of no less than $379.50 because all hours were paid at Little's
> overtime rate of $34.50 per hour.  When asked, Little explained that he considered
> Dallas and McKinney to be synonymous for purposes of travel as recorded on his
> timesheets.

*Id.* at ¶¶ 9, 10, 11.  Ms. Paola also affirms that Plaintiff's commutes differ from other technicians that travel similar distances, and that in each of the examples listed above, Plaintiff's commute times to cities represent at least two extra hours of time (and in some cases more) for which Plaintiff offered no explanation when asked.  Ms. Paola states that the technicians use GPS tracking devices to verify locations and commute times to and from work, as well as travel time between jobsites during continuous workdays.  *Id.*  Ms. Paola also indicates that Plaintiff's truck was equipped with a GPS tracking device prior to its use by Plaintiff; however, shortly after Plaintiff took possession of the vehicle, the GPS tracking device stopped working.  *Id.* at ¶ 8.  Ms. Paola states, "I instructed Little to contact the GPS provider to correct the problem or to obtain a new GPS unit at TSP's expense on numerous occasions."  *Id.*  Plaintiff testified that he shipped the GPS unit back to TSP and never received a new one from TSP (Dkt. #72 at Exhibit D at 44).

In his affidavit submitted in his response to Defendant's motion for summary judgment,[2] Plaintiff states that his timesheet entries show the number of hours he worked and whether the hours were for time worked on an oil rig, or time spent driving (Dkt. #72, Exhibit A at ¶ 10).  Plaintiff contends that:

> The entries for travel time typically noted my starting location, such as McKinney (Dallas), and a town in the vicinity of the assigned oil rig.  The rigs did not have a street address or other identifying location, so I usually noted a nearby town.  The rigs themselves were located in rural areas outside of town, often on unmarked back roads or private roads, which were sometimes difficult to locate or gain access to, especially at night.  My travel time included the time incurred in locating and driving to the rig, as well as in getting cleared by the rig operator to enter the secure rig area.  In addition, the travel time included any time incurred in driving to pick up parts or supplies for use on the job, or to pick up and deliver parts shipped from TSP.

---

[2] This paragraph was not included in Plaintiff's affidavit attached to his original motion for summary judgment.

*Id.* Plaintiff also states that no one at TSP ever questioned him regarding his timesheets. *Id.* at ¶ 11.

The Court finds that Plaintiff's records are insufficient to allow a "just and reasonable inference" of the hours Plaintiff worked.  To support his initial burden, Plaintiff provided the handwritten timesheets and paychecks issued to him by TSP.  However, standing alone, these records are insufficient to demonstrate the hours worked by Plaintiff and which hours Plaintiff was compensated for, and those which he was not compensated for.  The Court is unable to determine based on the evidence submitted by Plaintiff how much compensation Plaintiff received for which hours, which is Plaintiff's burden to show.  In addition, Defendants produce evidence that negates the reasonableness of the drive time reported by Plaintiff.  There is no indication that the large time discrepancies on Plaintiff's timesheet were simply due to an inability to locate the oil rig, or that once Plaintiff reached the town nearest to the oil rig he was required to drive an additional 2 hours, and in some cases more, to reach the oil rig itself.  Further, Plaintiff failed to even address this argument in his summary judgment briefing.  Therefore, Plaintiff has not met his burden to demonstrate that he worked hours for which he was not compensated.

In order to "clarify the duties of employers concerning compensating employees for incidental activities that constitute work but which occur before, after, or during the work shift," Congress passed the Portal-to-Portal Act in 1947.  *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562 (E.D. Tex. 2001), *aff'd*, 44 F. App'x 652 (5th Cir. 2002).  The Portal-to-Portal Act provides, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the [FLSA]…
> on account of the failure of such employer to pay…an employee overtime
> compensation, for or on account of any of the following activities…

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). An employee may be engaged in many principal activities, which include "any work of consequence performed for an employer, no matter when the work is performed." *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir. 1976). An activity is considered "principal" if it is "'an integral and indispensable part of the principal activities for which [the employee is] employed'" and not specifically excluded by the Portal-to-Portal Act. *IBP, Inc. v. Alvaraz*, 546 U.S. 21, 30 (2005) (citation omitted). The Fifth Circuit has held that the test to determine which activities are "integral and indispensable," and, thus, "principal," is "whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business." *Dunlop*, 527 F.2d at 400-01.

"The Wage and Hour Division of the United States Department of Labor has promulgated federal regulations relating to travel time, which expressly state that ordinary home-to-work travel is not considered worktime and is not compensable." *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 703 (E.D. Tex. 2007) (citing 29 C.F.R. § 785.35); *accord Smith v. Azetc Well Servicing Co.*, 462 F.3d 1274, 1286 n.3 (10th Cir. 2006); *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999); *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998); *Vega v. Gaspar*, 36 F.3d 417, 424 (5th Cir. 1994).

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a

14

fixed location or at different job sites.  Normal travel from home to work is not worktime.

29 C.F.R. § 785.35.  "The phrase, 'normal travel,' is not an objective standard of how far most workers commute or are reasonably expected to commute but rather 'a subjective standard, defined by what is usual within the confines of a particular employment relationship.'"  *Johnson*, 554 F. Supp. 2d at 703 (citing *Kavanaugh*, 192 F.3d at 272; *accord Smith*, 462 F.3d at 1286 n.3).

In the instant case, it is undisputed that Plaintiff was required to drive to various oil rigs to complete the principal activities for which he was employed, namely, installing and servicing video camera systems.  At the time Plaintiff was hired in May of 2011, Defendants' policy was to include drive time in the calculation of hours worked and pay overtime for all hours in excess of 40 hours a week.  On September 23, 2011, Defendants changed their policy regarding driving time.  Specifically, Defendants' policy paid regular time for all hours worked including time spent driving to each oil rig and back; however, the first and last commute of the day was excluded from the overtime pay calculations.  Plaintiff contends that all hours worked should also have been included in the calculation of overtime hours.  Plaintiff asserts that during the workweek ending September 29, 2011, he worked 55 hours, but was not paid any overtime. Plaintiff contends he is entitled to 18 hours of overtime pay for this workweek.[3]  Plaintiff also contends that during the workweek ending October 6, 2011, he worked 70 hours, but was not paid any overtime.  Plaintiff argues that he is entitled to 30 hours of overtime pay, resulting in a

---

[3] The Court notes that the amount requested by Plaintiff for this workweek in his motion for summary judgment is 15 hours of overtime pay for a total of $172.50.  However, in his response to Defendants' motion for summary judgment, Plaintiff claims he is entitled to 18 hours of overtime pay for this workweek, due to the fact that 3 additional hours for this week were included on a timesheet dated September 22, 2011.  According to Plaintiff, these working hours occurred in the early morning of September 23, 2011.  Plaintiff requests in his response 18 hours of overtime pay for a total of $207.00.

total of $345.00.  Plaintiff also argues that during the workweek ending October 13, 2011, he worked 50 hours, but was not paid any overtime pay.[4]

Plaintiff is not entitled to overtime compensation for ordinary home-to-work travel time. However, under the Portal-to-Portal Act, otherwise non-compensable time can still be made compensable by custom or practice.  29 U.S.C. § 254(b); *see also Vega*, 36 F.3d at 424 ("…unless a contract or custom of compensation exists between the employer and the employees.")  Plaintiff argues that Defendants had a custom or practice of compensating Plaintiff for his driving time.

TSP did have a custom or practice of paying overtime pay for Plaintiff's driving time prior to September 23, 2011.  However, after September 23, 2011, TSP made it clear that it would no longer be paying Plaintiff overtime pay for his driving time.  "The applicable custom or practice must be in effect 'at the time of such activity' for it to fall within the exception." *Johnson*, 554 F. Supp. 2d at 707 (citing 29 U.S.C. § 254(b)(2)).  It is clear that on September 23, 2011, TSP changed its custom or practice and notified its employees of the change.  "Thus, the compensability of such an activity, and its inclusion in computation of hours worked, is not determinable by a custom or practice which had been terminated before the activity was engaged in or was adopted some time after the activity was performed."  29 C.F.R. § 790.11.  The regulations also permit the "recognition of changes in customs, practices and agreements which reflect changes in labor-management relations or policies."  *Id*.  Therefore, the Court finds that Plaintiff's ordinary home-to-work travel time is not made compensable by a custom or practice of Defendants.

---

[4] Plaintiff states that he is not seeking overtime compensation for October 12 and 13, 2011, in which the truck was in the shop in McKinney, Texas, for repair estimates that Plaintiff alleges TSP requested he obtain (Dkt. #72 at 6 n.5).

Plaintiff also contends that he is entitled to recover the alleged hours as overtime pay because they are not excluded by the Portal-to-Portal Act, and instead are compensable work time.  The Employment Commute Flexibility Act ("ECFA") clarified the applicability of the Portal-to-Portal Act as it relates to those employees who use employer-provided vehicles.  29 U.S.C. § 254(a).  The ECFA provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee.

*Id*.  In the present case, it is undisputed that Plaintiff used TSP's company truck to travel to the oil rigs in various locations.  Thus, to be non-compensable, the use of the vehicle must be (1) within the normal commuting area for the employer's business or establishment, and (2) must be subject to an agreement on the part of the employer and employee.  *Id*.

Defendants contend that the normal commuting area for TSP's business includes Louisiana, Texas, Oklahoma, Colorado, New Mexico, and other various locations.  Defendants' evidence indicates that TSP required its technicians to drive to various oil rigs located in a variety of locations (Dkt. #75, Exhibit B at 17).  Plaintiff provides no evidence regarding the normal commuting area for TSP and its technicians.  Plaintiff contends that he was hired to work in the North Texas area; however, this is not the inquiry required under the statute.  The statute requires that the "use of such vehicle for travel is within the normal commuting area for the employer's business or establishment."  29 U.S.C § 254(a).  Plaintiff's normal commuting area is irrelevant to this inquiry.  Further, even if Plaintiff's normal commuting area was relevant, the Court notes that it is undisputed that Plaintiff commuted to oil rigs in a variety of locations

throughout his employment at TSP.  Therefore, the Court finds that Plaintiff's travel occurred within the normal commuting area for TSP.

Plaintiff contends that in *Chambers v. Sears, Roebuck and Co.*, 793 F. Supp. 2d 938 (S.D. Tex. 2010), *aff'd*, 428 F. App'x 400 (5th Cir. 2011), the Fifth Circuit held that the normal commuting area is limited to commutes no longer than one hour.  However, this is an incorrect statement of the Fifth Circuit's holding.  In *Chambers*, the district court held that the normal commuting area could be defined by an amount of time, and held that commute times of up to one hour would comply with the statute.  793 F. Supp. 2d at 949.  However, the district court also recognized that other courts recognized much longer commutes as well.  *Id*. (citing *Smith*, 462 F.3d at 1288-90 (commutes of up to three and a half hours non-compensable); *Vega*, 36 F.3d at 424 (daily commutes of up to four hours non-compensable)).  *Chambers* did not limit a normal commuting time to a one-hour time period, but recognized that based on the facts of that case, a one-hour commute time would comply with the statute.

Defendants also assert that Plaintiff's use of the company vehicle was subject to an agreement on the part of the employer and the employee.  Specifically, Defendants contend that the employee manual and a later agreement required Plaintiff to perform repairs and maintenance on the vehicle at Plaintiff's expense and use the assigned truck for commutes to the rig sites.  Plaintiff signed the employee manual and the agreement entered into on October 10, 2011 (*See* Dkt. #64, Exhibit F at 114; Exhibit B at 122-23).  Plaintiff contends that the employee manual is not a contract and creates no contractual rights, and it cannot serve as an agreement.  Further, Plaintiff argues that he did not sign the later agreement until October 17, 2011, which is after the workweeks at issue in this case.

For the purposes of the statute, it is not necessary for the agreement to be in writing, but may rest on "an understanding based on established industry or company practice."  H.R. No. 104-585 (explicitly rejecting a requirement that the agreement must be knowing and voluntary, and permitting employers wide latitude to impose, as a condition of employment, non-voluntary and non-compensable employee use of the employer's vehicle.).  Therefore, the agreement need not be a contract, it need not be voluntary, it need not be in writing, and it may be imposed on the employee as a condition of employment.  *See Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1051-52 (9th Cir. 2010).  Based on Defendants' evidence, it was the business practice of TSP to require its technicians to drive company vehicles during their commutes to the oil rigs, and that the technicians maintained and repaired the vehicles at their own expense.  This is an agreement sufficient to satisfy the statute.  However, it also appears that the employee manual and a subsequent policy memorialized this agreement in writing, and Plaintiff signed both.  Plaintiff presents no evidence to the contrary.  Therefore, the Court finds that Plaintiff's use of the company vehicle was subject to an agreement.

Because the use of TSP's company vehicle for commuting to various oil rigs was both within the normal commuting area for TSP's business, and subject to an agreement between the employer and the employee, the Court finds that Plaintiff's commute time is not rendered compensable by the ECFA.

Next, Plaintiff asserts that his overnight travel time is compensable work time.  The regulation that Plaintiff relies on states:

> Travel that keeps an employee away from home overnight is travel away from home.  Travel away from home is clearly worktime when it cuts across the employee's workday.  The employee is simply substituting travel for other duties.  The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days.  Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through

19

Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.

29 C.F.R. § 785.39  Plaintiff contends that nearly all of his travel time is travel away from home because it kept him away from home overnight, and the travel cut across his workday. Defendants argue that Plaintiff's decision to stay at a hotel instead of returning home after the completion of the work done at a rig site does not render all of his travel time compensable.

First, as discussed above, Plaintiff has not met his burden to show that he worked hours for which he was not properly compensated.   Defendants have demonstrated significant discrepancies in Plaintiff's timesheets, and Plaintiff offers no explanation for these discrepancies. Second, Plaintiff argues that when he was working, his workday was 24 hours a day, 7 days a week; thus, any travel away from home would be considered "worktime" under Plaintiff's definition.  The Court finds this argument unpersuasive.  As noted above, the normal commuting area for TSP's business included a variety of locations across several states.  Not all travel time would constitute travel away from home.  For example, Plaintiff's timesheet dated September 28, 2011, shows that Plaintiff traveled from Dallas (McKinney), Texas, to Sunset, Texas, which took him two hours (Dkt. #72, Exhibit A-6 at Little 180).   The commute home similarly took two hours.  *Id*.  This is clearly not travel that keeps an employee away from home overnight. Similarly, Plaintiff's timesheet dated September 29, 2011, demonstrates that Plaintiff traveled from Dallas (McKinney), Texas, to Anderson, Texas, which took him four hours both ways.  *Id*. at 182.  Again, this is not travel that keeps an employee away from home overnight.[5]

Further, it is impossible to tell which of Plaintiff's commutes would require an overnight stay, since during one trip, Plaintiff might travel to several different oil rig sites to complete work.  For example, on September 22, 2011, Plaintiff worked at an oil rig called Bandera 9 (Dkt.

---

[5] The Court uses these timesheets as examples of what it would not consider overnight travel; however, Plaintiff does not argue that these hours worked should be compensable as overnight travel.

#72, Exhibit A-9, A-10).  The location of this oil rig is unknown.  Plaintiff claimed ten hours for this commute on one timesheet, and then submitted a second timesheet claiming eight hours for this commute.  *Id.*  Plaintiff's timesheet for September 23, 2011, claims a starting location of Midland, Texas (where Plaintiff presumably spent the night in a hotel), which then required 4.5 hours of travel to an oil rig labeled M09, again in an unknown location. *Id.*, Exhibit A-6 at Little 177.  Finally, on September 23, 2011, Plaintiff reported a three-hour commute from M09 to Carlsbad, New Mexico.  Because of the unknown locations of the oil rigs and hotels Plaintiff stayed at during his trip, the Court is unable to make a determination of whether Plaintiff is entitled to recover overtime pay based on overnight travel time.  Plaintiff has made no effort to provide the Court with information sufficient to support his claims for overtime pay.  Therefore, the Court finds Plaintiff's drive time is not compensable because it constitutes overnight travel time.

Next, Plaintiff contends that his driving time between job sites as part of the continuous workday is compensable.  Defendants agree, and paid Plaintiff his regular rate of pay for these driving hours.   Plaintiff asserts that he is entitled to overtime pay for these hours. While Defendants counted these hours towards his overtime pay, because Plaintiff's total hours worked, excluding his first and last commute of the day, did not reach 40 hours for the workweek, no overtime pay was required.  The Court finds that this does not constitute a violation of the FLSA.

Next, Plaintiff contends that his "idle time" or "wait time" is compensable.  Specifically, Plaintiff claims that the time he spent waiting for his truck to be towed, time his truck spent in the shop for repairs, and time spent obtaining estimates for repairs for his truck is compensable work time.  "Any work which an employee is required to perform while traveling must, of course, be counted as hours worked."  *Chambers*, 793 F. Supp. 2d at 962 (quoting 29 C.F.R. §

785.41).  "Whether waiting time is time worked under the [FLSA] depends upon particular circumstances."  *Id.* (quoting 29 C.F.R. § 785.14).  "An employee is engaged to wait, and thus must be compensated, when he is unable to use waiting time 'effectively for his own purposes,' and the time 'belongs to and is controlled by the employer.'"  *Id.* (quoting 29 C.F.R. § 785.185); *Vega*, 36 F.3d at 425 ("waiting time is compensable if the wait predominately benefits the employer").

Plaintiff asserts that his time spent waiting for truck repairs and towing primarily benefitted his employer, TSP.  Plaintiff states that he could not use this time for his own purposes because he was away from home.  The Court finds this argument unpersuasive.  "Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity."  *Vega*, 36 F.3d at 425 (citing 29 U.S.C. § 254).  As noted above, it was Plaintiff's responsibility to pay for repairs and maintenance done to his truck. Again, Plaintiff's principal activity was installing and servicing video camera systems on oil rigs. Obtaining maintenance or repairs for his truck is a preliminary or postliminary activity.  *See* H.R. No. 104-585 at 5 ("routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable.").  While Plaintiff was away from home during some of this time, there is no evidence that Plaintiff could not have used this time in other personal ways.  Plaintiff performed no activities for the benefit of his employer during this wait time, and therefore, it is not compensable under the FLSA.

Finally, Plaintiff also contends that TSP improperly deducted one hour for Plaintiff's lunch period.  This issue is not raised in Plaintiff's motion for summary judgment, but instead is raised in Plaintiff's response to Defendants' motion for summary judgment.  Further, Defendants contend that this claim was not included in any of Plaintiff's discovery responses.  Defendants

note that Plaintiff sought recovery for these same hours in his claim for unpaid wages with the Texas Workforce Commission ("TWC"), and his claim was dismissed for lack of evidence (Dkt. #72, Exhibit G at TWC 028).  The Court will not address this claim, since it was not raised in Plaintiff's motion for summary judgment or discovery responses, and it was previously adjudicated by the TWC in their consideration of Plaintiff's claims.

Based on the foregoing, the Court finds that Plaintiff lacks evidence to support his claim for overtime compensation under the FLSA, and thus, this claim should be dismissed.[6] Therefore, the Court finds Plaintiff's motion for summary judgment is denied in its entirety, and Defendants' motion for summary judgment on Plaintiff's claim for overtime compensation under the FLSA is granted.

*C.  Plaintiff's Claim for Retaliatory Discharge Under the FLSA*

Defendant also moves for summary judgment on Plaintiff's claim for retaliatory discharge under the FLSA.  Plaintiff does not move for summary judgment on this claim.  To prevail on a claim for retaliatory discharge, a plaintiff must make a prima facie showing of (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action.  *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).  "If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision."  *Id*.  The burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination.  *Id*.

Defendants argue only that Plaintiff did not engage in a protected activity.  Plaintiff argues that Defendants terminated him for lodging an "oral complaint" about the new overtime

---

[6] The parties both move for summary judgment on Defendants' affirmative defenses, which are the following:  (1) that Defendants are entitled to offset pre-payments made to Plaintiff; (2) unclean hands; and (3) good faith. Defendants also contend that Plaintiff is not entitled to recover liquidated damages or attorneys' fees, that the conduct by Defendants was not "willful," and that Keith and Donna Lear are not individually liable under the FLSA. Because the Court finds Plaintiff's claim for overtime compensation is dismissed, the Court will not address these arguments as they are moot.

compensation policy implemented by Defendants that did not include commute time in overtime hours.   Defendants first assert that because Plaintiff cannot prove a claim for overtime compensation under the FLSA, then he cannot be engaged in a protected activity.   However, this argument is misplaced.   The FLSA does not require that a plaintiff successfully prove a claim for overtime under the FLSA, but merely that the plaintiff prove he was engaged in a protected activity.

The FLSA provides that it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  At the time of Plaintiff's discharge, Plaintiff had not filed the present suit.  Therefore, Plaintiff's claim for retaliatory discharge depends on whether Plaintiff "filed a complaint" under § 215(a)(3). Defendants argue that no complaint was filed because Plaintiff did not assert a violation of law or complain of illegal activity.   Rather, Defendants contend that Plaintiff merely voiced discontent or personal objections to the overtime policy.

The Supreme Court states that "a complaint is 'filed' when 'a reasonable, objective person would have understood the employee' to have 'put the employer on notice that [the] employee is asserting statutory rights under the [Act]."   *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011).  "[T]he employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation." *Id*. at 1334.  "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  *Id*. at 1335.  This can be met by oral complaints as well as written ones.  *Id*.

Plaintiff's evidence indicates that he refused to sign the amended overtime policy, and informed Ms. Lear that he disagreed with the policy because it wrongly and unfairly deprived him of overtime pay.  Ms. Lear discussed with Plaintiff that TSP was not legally required to pay overtime for driving time.  Plaintiff signed the amended overtime policy because Defendants informed him that they would withhold his check without the signed policy.  Plaintiff crossed out the words "agrees to its contents" in the policy, noting his objection.  Plaintiff discussed the overtime policy with two coworkers and discussed his consultation with an attorney regarding the policy.  During the discussion in which Plaintiff was fired, Ms. Lear told Plaintiff that she knew he was discontent with the policy and that he planned to sue the company.  Ms. Lear told Plaintiff that TSP was not intimidated by threats, that they had consulted with their own lawyers, and that TSP was not legally obligated to pay for driving time.  The Court finds that this evidence is sufficient to make a prima facie showing that Plaintiff engaged in a protected activity, which was filing a complaint.  Defendants did not argue that they have a legitimate, non-discriminatory reason for the discharge.  Therefore, the Court finds Defendants' motion for summary judgment on Plaintiff's claim for retaliatory discharge under the FLSA is denied.

Defendants also argue that Plaintiff is not entitled to recover damages for emotional distress, punitive damages, or compensatory damages under the FLSA.  Plaintiff's Original Petition seeks "lost wages in the past and in the future, compensatory damages as suffered by Plaintiff, and his reasonable and necessary attorneys' fees," as well as punitive damages for their intentional act of discharge (Dkt. #1).

Defendants argue that they are entitled to summary judgment for compensatory and punitive damages because those remedies are not available under the FLSA.  The FLSA permits a retaliation plaintiff to recover "such legal or equitable relief as may be appropriate to effectuate

the purposes of section 215(a)(3)." 29 U.S.C. § 216(b).  Neither the Fifth Circuit nor the United States Supreme Court has addressed the issue of compensatory damages under the FLSA.  *See Lee v. U.S. Sec. Associates, Inc.*, No. A-07-CA-395-AWA, 2008 WL 958219, at *7 (W.D. Tex. April 8, 2008).  However, "[e]very Circuit to address the issue, including the Sixth, Seventh, Eighth, and Ninth Circuits, have expressly allowed compensatory damages (including mental anguish damages) in the context of a retaliation claim under the FLSA." *Id.*; *Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004); *Travis v. Gary Cnty Health Crt, Inc.*, 921 F.2d 108, 111-112 (7th Cir. 1990); *Broadus v. O.K. Indus., Inc.*, 238 F.3d 990, 992 (8th Cir. 2001); *Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999).  These courts, as well as the district court in the Western District of Texas, reasoned that 29 U.S.C. § 216(b) provides a list of enumerated relief, but included the phrase "without limitation."  This phrase made the list of recoverable damages illustrative and not exhaustive, and did not intend to limit other legal or equitable remedies. Therefore, following the reasoning of these courts, this Court concludes that compensatory damages are permitted for a retaliation claim under the FLSA.

With respect to punitive damages, Defendants argue that punitive damages are not available under the FLSA because they are not available under the Age Discrimination in Employment Act ("ADEA").  The Fifth Circuit has also not addressed this issue, but when it interpreted similar language in the ADEA, the Fifth Circuit held that punitive damages are not available under that statute.  *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977).  In *Lee*, the district court for the Western District of Texas discussed the Fifth Circuit's reasoning in *Dean*, finding that one of the bases for the Fifth Circuit's decision in Dean was that the ADEA permitted liquidated damages for willful violations.  *Lee*, 2008 WL 958219, at *8.  The district court noted that similarly, the FLSA allows a prevailing plaintiff to recover "the payment of

26

wages lost and an additional equal amount as liquidated damages."   *Id.* (quoting 29 U.S.C. § 216(b)).   The *Lee* court concluded that because liquidated damages were a form of punishment, the only punitive damages permitted by the FLSA are liquidated damages equal to the Plaintiff's lost wages.   *Id.*  This Court agrees, and adopts this reasoning.   Therefore, the Court finds that Defendants' motion for summary judgment should be granted as to punitive damages in excess of the permitted liquidated damages.

Finally, Defendants also argue that lost and future wages are not available under the FLSA.   However, as Plaintiff points out, the FLSA by its very terms permits a Plaintiff to recover his lost wages:   "Any employer who violates the provisions of section 215(a)(3)… shall be liable for such legal or equitable relief as may be appropriate… including without limitation employment, reinstatement… and the payment of wages lost and an additional equal amount as liquidated damages."   29 U.S.C. § 216(b).   Therefore, the Court finds that if Plaintiff establishes his claim for retaliatory discharge, he may be entitled to recover lost wages.   In addition, the statute allows for reinstatement, and future wages are recoverable as an alternative to reinstatement where reinstatement is not feasible, as in this case.   *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007).   Defendants refuse to rehire Plaintiff, claiming he is untrustworthy and "didn't know his job," which makes reinstatement not feasible.   Therefore, the Court finds if Plaintiff establishes his claim for retaliatory discharge, he may also be entitled to recover future wages.   Lastly, Defendants assert that Plaintiff failed to mitigate his damages.   However, as Plaintiff notes, it is Defendants' burden to prove the failure to mitigate damages.   *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998).   Defendants have not proven Plaintiff failed to mitigate his damages.   Therefore, the Court finds that Defendants' motion for summary judgment on these grounds should be denied.

## CONCLUSION

Based on the foregoing, the Court finds Defendants' Motion for Complete, or in the Alternative, Partial Summary Judgment (Dkt. #64) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim under the FLSA for overtime compensation is dismissed. However, Plaintiff's claim for retaliatory discharge will remain. Plaintiff may recover compensatory damages under the FLSA, but no punitive damages will be available to Plaintiff.

The Court further finds Plaintiff's Motion for Partial Summary Judgment (Dkt. #70) is **DENIED**.

The Court further finds Defendants' Objection and Conformed, Amended Motion to Strike Plaintiff's Experts Brian Farrington and Scott Barnes (Dkt. #76) is **GRANTED IN PART** and **DENIED IN PART**. The report and testimony of Plaintiff's expert Brian Farrington will be stricken in its entirety; however, Defendants' objections to the report and testimony of Scott Barnes are overruled.

**IT IS SO ORDERED.**

**SIGNED this 15th day of April, 2013.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE